1  FOLIO LAW GROUP PLLC
   Cristofer I. Leffler (SBN 208129)
2  cris.leffler@foliolaw.com
   1200 Westlake Ave. N., Suite 809
3  Seattle, WA 98109
   Tel: (206) 880-1802
4

5  *Attorneys for Plaintiff Dali Wireless Inc.*

6  *Additional Counsel listed below signature line*

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11 DALI WIRELESS, INC.,                    Case No:  3:20-cv-06469-EMC
                        Plaintiff,
12        v.                               **DALI WIRELESS, INC.'S OPPOSITION TO**
                                           **DEFENDANT'S RENEWED MOTION AND**
13 CORNING OPTICAL COMMUNICATIONS          **MOTION FOR JUDGMENT ON THE**
   LLC,                                    **PLEADINGS OF NO WILLFUL**
14                                         **INFRINGEMENT**
                        Defendant.
15

16                                         Date:      March 31, 2022
                                           Time:      1:30 p.m.
17                                         Ctrm:      5, 17th Floor
                                           Judge:     Hon. Edward M. Chen
18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................2

        A.      Dali's Allegations of Willful Infringement...............................................2

        B.      Corning's Renewed Motion for Judgment on the Pleadings Relies on Facts Outside the Pleadings .............................................................................4

        C.      Corning's Witnesses Confirmed Dali's Allegations of Willful Infringement .................6

                1.      After learning of the patents-in-suit, ███████████████████
                        ███████████████████████████████ .............................................6

                2.      ████████████████████████████████████████
                        ██████████████████████ .................................................9

III.    LEGAL ARGUMENT ............................................................................................11

        A.      Dali Sufficiently Pleads Willfulness in the SAC ............................................11

                1.      Legal standard. .............................................................................11

                2.      Dali's SAC contains detailed allegations of willfulness....................................12

                        a)      Corning's actual pre-suit knowledge of the patents-in-suit. ...................12

                        b)      Corning's egregious conduct supports a finding of willfulness.............13

                3.      The cases relied on by Corning are readily distinguishable. ..............................16

        B.      Alternatively, The Court Should Convert Corning's Rule 12(c) Motion into a Motion for Summary Judgment and Deny It .................................................19

                1.      Legal standard. .............................................................................19

                2.      The Court should deny Corning's motion. ...........................................20

                        a)      Corning's actual pre-suit knowledge of the patents-in-suit. ...................20

                        b)      Corning's egregious conduct support a finding of willfulness. .............21

                3.      Pending discovery is relevant to Dali's willful infringement claim. ...................21

        C.      Alternatively, Dali Should Be Given Leave to Amend to Add Facts Corning Admitted in Discovery .................................................................24

IV.     CONCLUSION.......................................................................................................25

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3   *Abbott Labs. v. Frank*,
        17-CV-6002 (CBA) (LB), 2018 U.S. Dist. LEXIS 235216 (E.D.N.Y July 2, 2018)......................20
4
    *Anderson v. Liberty Lobby, Inc.*,
5       477 U.S. 242, 106 S. Ct. 2505, 2513 (1986)...................................................................................20

6   *Arctic Cat Inc. v. Bombardier Recreational Products*,
        876 F.3d 1350 (Fed. Cir. 2017) ......................................................................................................19
7
    *Ashcroft v. Iqbal,*
8       556 U.S. 662 (2009)..........................................................................................................................11

9   *Baxalta Inc. v. Bayer Healthcare LLC,*
        513 F. Supp. 3d 426 (D. Del. 2021) ...............................................................................................21
10
    *Bayer HealthCare LLC v. Baxalta Inc.*,
11      989 F.3d 964 (Fed. Cir. 2021) .........................................................................................................18

12  *Bell Atlantic Corp. v. Twombly,*
        550 U.S. 544 (2007)...................................................................................................................11, 12
13
    *Brooke v. Woodside Hotel Grp., Ltd.*,
14      20-05821 WHA, 2020 U.S. Dist. LEXIS 215038 (N.D. Cal. Nov. 17, 2020) ...........................19, 22

15  *Bullen v. De Bretteville*,
        239 F. 2d 824, 833 (9th Cir. 1956), cert. denied, 353 U.S. 947, 77 S. Ct. 825, 1 L. Ed. 2d 856
16      (1957)................................................................................................................................................13

17  *Cahill v. Liberty Mut. Ins. Co.*,
        80 F.3d 336 (9th Cir. 1996)......................................................................................................11, 13
18
    *Calcaterra v. Garrabrants (In re Bofi Holding, Inc. S'holder Litig.)*,
19      848 Fed. App'x 234 (9th Cir. 2021).........................................................................................24, 25

20  *Chavez v. U.S.*,
        683 F.3d 1102 (9th Cir. 2012) .........................................................................................................11
21
    *Corephotonics, Ltd. v. Apple, Inc.*,
22      No. 17-CV-06457-LHK, 2018 U.S. Dist. LEXIS 170408 (N.D. Cal. Oct. 1, 2018) ......................14

23  *Cyntec Co. v. Chilisin Elecs. Corp.*,
        No. 18-cv-00939-PJH, 2020 U.S. Dist. LEXIS 163602 (N.D. Cal. Sept. 8, 2020)........................21
24
    *Dworkin v. Hustler Magazine, Inc.*,
25      867 F.2d 1188 (9th Cir. 1989) .........................................................................................................11

26  *Elbit Sys. Land v. Hughes Network Sys., LLC*,
        2017 U.S. Dist. LEXIS 94495 (E.D. Tex. June 20, 2017) ........................................................20, 21
27

28

*Eminence Capital, LLC v. Aspeon Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ........................................................................................24

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
    240 F. Supp. 3d 605 (E.D. Tex. 2017).............................................................................21

*Erickson v. Pardus*,
    551 U.S. 89 (2007)....................................................................................................11, 13

*Ezonics Corp. v. Primax Elecs., Ltd.*,
    C 04-5370 MMC, 2005 U.S. Dist. LEXIS 48148 (N.D. Cal. Apr. 13, 2005)...................13

*Finjan, Inc. v. Cisco Sys.*,
    No. 17-cv-00072-BLF, 2017 U.S. Dist. LEXIS 87657 (N.D. Cal. June 7, 2017) ............16

*Finjan, Inc. v. Cisco Sys.*,
    No. 17-cv-00072-BLF, 2018 U.S. Dist. LEXIS 239284 (N.D. Cal. Feb. 6, 2018)....................15, 25

*Fluidigm Corp. v. IONpath, Inc.*,
    C 19-05639 WHA, 2020 U.S. Dist. LEXIS 12154 (N.D. Cal. Jan. 24, 2020)............17, 18

*Fortinet, Inc. v. Forescout Technologies, Inc.*,
    20-cv-03343-EMC, 2020 U.S. Dist. LEXIS 204580 (N.D. Cal. Nov. 2, 2020) ...............18

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 S. Ct. 2060 (2011) ....................................................................................14

*Global Network Commc'ns, Inc. v. City of N.Y.*,
    458 F.3d 150 (2d Cir. 2006) ...........................................................................................20

*Gonzales v. City of San Jose*,
    No. 13-cv-00695-BLF, 2015 U.S. Dist. LEXIS 65533 (N.D. Cal. May 19, 2015) ............5

*Google LLC v. Princeps Interface Technologies LLC*,
    No. 19-cv-06566-EMC, 2020 U.S. Dist. LEXIS 52753, (N.D. Cal. March 26, 2020)....................18

*Grove v. Mead School Dist.*,
    753 F.2d 1528 (9th Cir. 1985) ........................................................................................20

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016)...................................................................................14, 16, 20

*Ho v. Pinsukanjana*,
    No. 17-cv-06520-PJH, 2019 U.S. Dist. LEXIS 96295 (N.D. Cal. June 7, 2019).......................1, 19

*In re Bare Escentuals, Inc. Sec. Litig.*,
    745 F. Supp. 2d 1052 (N.D. Cal. Sept. 30, 2010) .............................................................5

*Lacey v. Maricopa Cnty.*,
    693 F.3d 896 (9th Cir. 2012) ..........................................................................................13

*MasterObjects, Inc. v. Amazon.com, Inc.*,
    No. C 20-08103 WHA, 2021 U.S. Dist. LEXIS 194462 (N.D. Cal. Oct. 7, 2021) ....................17, 18

*Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*,
No. 19-1334-RGA-CJB, 2021 U.S. Dist. LEXIS 95947 (D. Del. May 20, 2021)............................12

*Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*,
No. 19-cv-1334-RGA, 2021 U.S. Dist. LEXIS 183032 (D. Del. Sept. 24, 2021)...........................13

*Nat'l Funding, Inc. v. Commercial Credit Counseling Servs.*,
817 Fed. App'x 380 (9th Cir. 2020)..............................................................................24, 25

*Pine v. City of Oakland*,
No. 19-cv-02136-AGT, 2020 U.S. Dist. LEXIS 87064 (N.D. Cal. May 16, 2020) ........................19

*PSC Computer Prods., Inc. v. Foxconn Int'l*,
355 F.3d 1353 (Fed. Cir. 2004) ............................................................................................7

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992) ............................................................................................15

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ............................................................................................11

*Software Research, Inc. v. Dynatrace LLC*,
316 F. Supp. 3d 1112 (N.D. Cal. 2018)..................................................................................18

*SRI Int'l, Inc. v. Cisco Sys.*,
14 F.4th 1323 (Fed. Cir. 2021) .............................................................................14, 18, 21

*SRI Int'l, Inc. v. Cisco Systems*,
930 F.3d 1295 (Fed. Cir. 2019) ............................................................................................18

*Straight Path IP Grp, Inc. v. Apple Inc.*,
No. C 16-03582 WHA, 2017 U.S. Dist. LEXIS 146751 (N.D. Cal. Sep. 9, 2017) .............12, 14, 15

*Valadez-Lopez v. Chertoff*,
656 F.3d 851 (9th Cir. 2011) ............................................................................................13

*Velocity Patent LLC v. FCA US LLC*,
319 F. Supp. 3d 950 (N.D. Ill. 2018) ...................................................................................21

*WiNet Labs LLC v. Apple, Inc.*,
No. 5:19-cv-02248-EJD, 2020 U.S. Dist. LEXIS 12138 (N.D. Cal. Jan. 24, 2020) ........................17

*XimpleWare, Inc. v. Versata Software, Inc.*,
5:13-cv-05161-PSG, 2014 U.S. Dist. LEXIS 165060 (N.D. Cal. Nov. 25, 2014)...........................25

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
No. 17-cv-03848-RS, 2017 U.S. Dist. LEXIS 168269 (N.D. Cal. Oct. 11, 2017) ..........................18

**STATUTES**

35 U.S.C. § 112(b) ............................................................................................................7

DALI WIRELESS, INC.'S OPP. TO DEF.'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS

**RULES**

Fed. R. Civ. P. 12(c) ....................................................................................................................1, 2

Fed. R. Civ. P. 12(d) ...................................................................................................................2, 19

Fed. R. Civ. P. 15(a)(2); .................................................................................................................24

Fed. R. Civ. P. 56(d) .......................................................................................................................22

Patent L.R. 3-7 ................................................................................................................................11

I.    **INTRODUCTION**

Three months after the close of fact discovery, Corning renewed its motion for judgment on the pleadings of no willfulness. If this timing sounds unusual, that's because it is. Not a single case cited by Corning involved a motion on the pleadings brought so late in the proceedings. And although Federal Rule of Civil Procedure 12(c) permits a defendant to seek dismissal after responding to a complaint, courts have found that it is not intended to be used as Corning uses it here: to unwind the clock on discovery that has already taken place. When, as here, discovery makes clear that the complaint is well-pled—or, alternatively, that amendment would not be futile—seeking dismissal under Rule 12(c) at this late stage is a procedural gambit that serves only to waste judicial resources by dressing up a motion for summary judgment as a motion on the pleadings. *See Ho v. Pinsukanjana*, No. 17-cv-06520-PJH, 2019 U.S. Dist. LEXIS 96295 at *12-13 (N.D. Cal. June 7, 2019) (declining to consider purported motion on pleadings, weighing "the long delay in bringing the [m]otion and the extensive litigation that already has occurred in this case," ruling that "[t]he purpose of proper pleading is to give litigants sufficient notice of the claims against them," and finding that "[a]fter more than a year of discovery and with several motions pending before the court, there can be little doubt that [defendant] has sufficient notice of the issues at stake in this litigation," and finding defendant "dress[ed] up a second motion for summary judgment" as untimely motion on the pleadings) (cleaned up).

To plead willful infringement, a patent owner must allege (a) knowledge of the patent and (b) egregious conduct, including, for example, a defendant deliberately avoiding confirming the risk that that defendant is infringing patents of which it has become aware. Before Dali filed the operative complaint on September 20, 2021, Corning admitted to pre-suit knowledge of each asserted patent. The first element is thus met because the complaint includes the dates and circumstances by which Corning acquired pre-suit knowledge. And based on Corning's extensive history of monitoring Dali's patents and failure to take any remedial actions after discovering the asserted patents, Dali pled that Corning's conduct in ignoring Dali's asserted patents was egregious.

If Corning actually believed Dali's pleadings allegations were inadequate it could have moved under Rule 12(c) in September 2021. Instead, it answered the complaint and proceeded to discovery,

DALI WIRELESS, INC.'S OPP. TO DEF.'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS

during which both parties extensively covered willfulness. It's no mystery why Corning seeks to unwind the clock now. On November 4, 2021, ████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████ And on November 8, 2021, ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ In short, Corning's key decision-makers admitted—as alleged in the complaint—that they failed to take remedial action after learning of the asserted patents, because they willfully blinded themselves to Corning's infringement.

Dali's complaint is well-pled, and Corning's motion should be denied even under a straight reading of Rule 12(c) and the case law cited by Corning. But Corning's motion reflects an even deeper flaw: by bringing its motion under Rule 12(c) at this late stage of the case, Corning insists that the Court must ignore facts outside pleadings even as the evidence in the record directly contradicts Corning's arguments. The Court should not do so for two reasons. First, Corning itself relies on facts outside the pleadings, which under Rule 12(d) requires the Court to convert Corning's motion into a motion for summary judgment. Second, because the evidence proffered below establishes that further amendment would not be futile, even if the Court is inclined to grant Corning's motion, relevant Ninth Circuit authority makes clear that the Court should allow Dali to amend the complaint to include the facts that Corning otherwise hopes the Court will ignore.

Thus, for all the reasons detailed below, the Court should deny Corning's motion.

## II.   FACTUAL BACKGROUND

### A.   Dali's Allegations of Willful Infringement

Dali filed the original Complaint in this action on December 30, 2019. ECF No. 1. The original Complaint did not include any of the patents-in-suit. *Id.* Dali then voluntarily filed the First Amended Complaint ("FAC") on April 30, 2020. ECF No. 7. Because the FAC is the first time that Dali asserted

the patents-in-suit against Corning, April 30, 2020, is the relevant date by which to measure pre-suit knowledge of the patents-in-suit. *See, infra* III.A.2.a.

Corning answered the FAC on May 26, 2020. ECF No. 16. On July 15, 2021, Corning filed its first motion for judgment on the pleadings directed to Dali's allegations of willful infringement. ECF No. 84. During the hearing on Corning's motion, the Court focused on Corning's knowledge of the patents and did not hear or address the facts or arguments detailed below. ECF No. 111 at 1-18. The Court granted Corning's motion, with leave to Dali to amend, on August 19, 2021. ECF No. 96.

Dali filed the Second Amended Complaint ("SAC") on September 20, 2021. ECF No. 109. Although discovery had begun at that point, no depositions had been taken. Based on Corning's interrogatory response admitting pre-suit knowledge of each of the patents-in-suit, Corning's long history of investigating Dali and its technology, and Corning's ongoing and intentional infringement, Dali realleged willful infringement. ECF No. 109 ¶¶ 35-75. The SAC alleges that on October 14, 2016, Corning's in-house counsel learned of the '358 Patent; on April 8, 2020, Corning's in-house counsel learned of the '261 Patent; and on April 15, 2020, Corning's in-house counsel learned of the '454 Patent. *Id.* ¶¶ 37-39. The SAC thus establishes Corning's actual, pre-suit knowledge of the patents-in-suit. It also pleads facts known to Dali at the time alleging Corning's egregious conduct in infringing Dali's patent rights. *Id.* ¶¶ 35-75. For example, Corning:

- *deliberately* "extensively examined Dali's patent portfolio and proprietary technology – through the guise of a strategic partnership and later potential acquisition – yet did nothing to subsequently ensure its products avoided infringement." *Id.* ¶ 35.

- *deliberately* "did nothing to avoid infringing the patents-in-suit." *Id.* ¶ 40.

- *deliberately* "did nothing to ensure that the products acquired as part of the SpiderCloud acquisition did not infringe Dali's patents." *Id.* ¶ 67.

- *deliberately* "harmed the market for Dali's products and Dali's reputation as a technology leader in the industry" by continuing to "develop and market products that infringe Dali's patents." *Id.* ¶¶ 71-72.

- *deliberately* "continues developing products that incorporate Dali's extensive patented technologies." *Id.* ¶ 72.

- **_deliberately_** "continues to sell the accused SpiderCloud products that infringe Dali's patents without authorization." *Id.* ¶ 73.
- In addition, "[Corning] has an extensive history of monitoring Dali's patents and published applications and was at least willfully blind as to whether it infringed the patents-in-suit." *Id.* ¶ 41.

Dali thus alleged egregious conduct sufficient to plead willful infringement.

Corning answered the SAC on October 4, 2021, ECF No. 112, and the parties proceeded to discovery. During discovery, Corning's Rule 30(b)(6) witnesses provided detailed testimony that confirmed Corning willfully blinded itself to its infringement of the asserted patents ████████

████████████████████████████████████████████████████████████████████████████

████████  *See infra* II.C. Hoping to avoid the clear impact of these admissions on its defense to willful infringement, Corning renewed its motion for judgment on the pleadings on February 18, 2022. ECF No. 124.

### B.    Corning's Renewed Motion for Judgment on the Pleadings Relies on Facts Outside the Pleadings

Three months after the close of fact discovery, Corning renewed its motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Despite the intervening months of discovery during which the allegations in the SAC were fleshed out in detail with supporting evidence that Corning knew it was infringing Dali's patents and failed to take any remedial action, Corning filed a Rule 12(c) motion premised on the idea that the Court should ignore that evidence and focus only on pre-discovery allegations in the SAC. And although Corning nominally asks the Court to rule on the pleadings, Corning itself introduces materials outside of the pleadings in its motion.

First, Corning attaches and cites to an order from an unrelated case between the parties pending in the Western District of Texas ("WDTX"). *See* ECF No. 124 at 7; *see also* ECF No. 124-3. Corning may argue that the WDTX order is subject to judicial notice. But Corning does not just point to the text of the order—Corning makes inaccurate factual assertions characterizing the order, describing it as "a recent ruling against Dali in a case alleging the same theory against Corning in the Western District of Texas" and asking the Court here to consider Corning's motion the "***third***" time Corning opposes

Dali's allegations of willfulness. ECF No. 124 at 7 (emphasis in original). Nothing in the pleadings nor in the order from the WDTX supports these assertions. The WDTX action involved (a) a different patent, (b) a different accused product, and (c) a different willfulness theory; indeed, Corning itself argued as much in that action: "a willfulness allegation in another case dealing with different patents and different accused products ***is of no moment to a claim of willfulness in this case***." Szpjda Decl. Ex. A at 8 (emphasis added). And it is not possible to assert that this is the "third" time Corning is addressing "the same theory" without comparing the facts and circumstances of those theories. By making inaccurate factual assertions about the order and inviting this Court to draw conclusions from another court's findings, Corning goes beyond introducing material that might be subject to judicial notice.[1]

Second, Corning argues that "Dali yearns to spin a sordid tale of Corning's misdeeds for the jury, but it lacks the ever-crucial ***facts*** necessary to do so." ECF No. 124 at 7 (emphasis in original). Here, again, Corning references and mischaracterizes the factual record. At the time Dali filed the SAC, it had yet to take the depositions of Corning's witnesses. Since then, Dali has deposed key decision-makers ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████. *See infra* II.C. Corning's assertion that Dali "lacks" facts is incorrect—the relevant facts were learned through discovery ***after*** Dali filed the SAC. It should go without saying that this sequence of events—i.e., plausible pleadings to put Corning on notice of Dali's theory of willful infringement, followed by discovery that confirms the well-pled theory—is exactly what the Federal Rules of Civil Procedure are designed to accomplish.

---

[1] The rule permitting courts to take judicial notice of other courts' orders is narrowly drawn. *See Gonzales v. City of San Jose*, No. 13-cv-00695-BLF, 2015 U.S. Dist. LEXIS 65533 at *20 (N.D. Cal. May 19, 2015) ("a court may take judicial notice of its own records and of other court proceedings if they 'directly relate to matters before the court'"); *see also In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. Sept. 30, 2010) ("the court may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein."). Here, a separate willfulness theory involving a different patent and different accused product does not "directly relate" to the matter before the Court, and Corning expressly relies on the WDTX pleadings for alleged facts therein.

**C.    Corning's Witnesses Confirmed Dali's Allegations of Willful Infringement**

After Dali filed the SAC, the parties proceeded with discovery. Both Dali and Corning directed interrogatories and requests for production to the topic of willfulness. *See* Szpajda Decl. Ex. B at 6-10 (admitting pre-suit knowledge), 11-15; *see id.* Ex. C at 8-15; *see id.* Ex. D at 33-34; Ex. E at 55-56. And both Dali and Corning spent significant time deposing each other's witnesses on topics related to willfulness. *Id.* at Ex. F at 125:13-166:10; Ex. G at 26:5-34:6; Ex. H at 159:24-160:6; 160:21-15; 161:2-165:5; 165:22-185:15; 186:9-200:3; 200:15-220:14; Ex. I at 232:16-240:4; Ex. J at 97:21-100:19. As detailed below, Dali's discovery efforts confirmed that Corning's infringement after acquiring pre-suit knowledge of the patents-in-suit was indeed egregious.

**1.    After learning of the patents-in-suit,** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

On November 4, 2021, Dali took the deposition of Corning's corporate representative Keith Montgomery, Senior Managing Counsel for Corning, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ *Id.* at Ex. F at 10:6-12; *see also id.* at Ex. K and Ex. L; *see also id.* Ex. B at 6-10.

Mr. Montgomery ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at Ex. F at 171:3-172:8, 184:11-21; *see also* Ex. B at 8. Although Corning acquired the accused product from a company called SpiderCloud in July 2017, Corning admits that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at Ex. M at 276:19-282:21; *see also id.* Ex. N at 1 and O at 1-2. When pressed further about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at Ex. F at 174:19-175:7; 181:9-182:2 (following instruction not to answer). The only information Corning was willing to share is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ████████████████████████████████████████

2 ████████████████████████████████████████ on April 8,

3 2020, three weeks before Dali asserted the '261 Patent in this litigation. *Id.* at Ex. F at 186:6-18. Mr.

4 Montgomery refused to provide any details surrounding the circumstances ████████████

5 ████ on privilege grounds. *Id.* at 186:20-187:13. Finally, ████████████████████

6 approximately one week later on April 15, 2020, but again refused to disclose the circumstances

7 ████████████████████ on privilege grounds. *Id.* at 188:6-19.

8     Notwithstanding Corning's pre-suit knowledge of Dali's patents, and despite the long history

9 between the parties (ECF No. 109 ¶¶ 35, 40-65),[3] ████████████████████████

10 ████████████████████████████ *Id.* at Ex. F at 219:14 221:10. Incredibly, Mr.

11 Montgomery testified that ████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████ *Id.* at 190:18-191:8 ████████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████ (emphasis added)).[4] In other words, Mr. Montgomery admitted that ████████

16

17 _____

[2] Although Mr. Montgomery testified that ████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████ *See* Szpajda Decl. Ex. F 172:2-
175:7. Dali challenged Corning's objections (ECF No. 125), but the Court denied Dali's motion during

20 the March 4, 2022, discovery hearing. Dali respectfully requests that the Court weigh Corning's
decision to assert privilege under these circumstances heavily against the credibility of Mr.

21 Montgomery's testimony ████████████████████████████████████████████

22 ████

[3] Mr. Montgomery confirmed that ████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████ *Id.* at 125:13-166:10. The fact that ████████████

25 ████████████████ strongly suggests Corning's interest in Dali's patents did not stop in 2014.

26 [4] It is, of course, black-letter law that patent claims—not the title of the patent—define the scope of the
invention. 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly

27 pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as
the invention"); *PSC Computer Prods., Inc. v. Foxconn Int'l*, 355 F.3d 1353, 1358 (Fed. Cir. 2004)

28 ("the claim provides notice as to the scope of the invention.")

1 ███████████████████████████████████████████████████████████████

2 ████████████████████████████████████████ He further testified that ██████████████

3 ████████████████████████████████████████████ *Id.* at 191:18-192:8.

4     Mr. Montgomery's conclusion that ██████████████████████████████

5 ███████████████████████████████████████████████████████████████

6 ████████████████████████ is facially inconsistent with Corning's and his own course-of-business

7 practices.[5] Mr. Montgomery helped prosecute a patent on behalf of Corning entitled "Unified Optical

8 Fiber-Based Distributed Antenna Systems (DASS) for Supporting Small Cell Communications

9 Deployment from Multiple Small Cell Service Providers, and Related Devices and Methods." *Id.* at

10 Ex. H at 64:9-67:22 (discussing U.S. Patent No. 9,800,340); *id.* at 66:17-25, 71:1-4 (identifying Mr.

11 Montgomery as patent prosecutor for relevant patent). The specification of Corning's patent equates

12 small cell with digital DAS, i.e., the subject of the asserted patents: "[a] small cell is a small size radio

13 node with a digital backhaul. Non-limiting examples include . . . digital DAS and remote radio heads

14 . . . and other radio nodes for specific applications." *Id.* at Ex. H at 67:10-22; *see also id.* Ex. P at 2:32-

15 40. In other words, ██████████████████████████████████████████

16 ███████████████████████████████████████████████████████████████

17 ███████████████████████████████████████████████████████████████

18 ███████████████████████████

19     In sum, Mr. Montgomery (a) confirmed he acquired pre-suit knowledge of the patents-in-suit;

20 (b) refused to testify about ████████████████████████████████████

21 ███████████████████████████████████████████████████████████████

22 ███████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

---

[5] Corning's position, which its own patents contradict, is that the accused product ████████████████
███████████ *See* Szpajda Decl. Ex. H at 52:9-14; *but see, e.g., id.* at 67:10-22.

2.    ███████████████████████████████
███████████████████████████████████████
██████████████████████████

On November 8, 2021, Dali deposed Michelle Engarto, Corning's Director of Global Manufacturing Excellence and Rule 30(b)(6) designee on Corning's business decision to continue selling the accused product after becoming aware of Dali's patents. *Id.* at Ex. G at 17:13-24; *see also id.* at Ex. Q and Ex. R. Ms. Engarto was formerly Corning's Vice President of Wireless Solutions, in which position she was responsible for guiding business decisions concerning the accused products from approximately 2017 to early 2021. *Id.* at Ex. G at 17:25-18:1, 18:13-16, 18:20-22, 21:16-21, 23:12-24:2 (testifying that ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████.

Ms. Engarto testified that ██████████████████████████ ████████████████████████ *Id.* at 23:12-24:2. Ms. Engarto does not have a software engineering background and her education "did not focus on electrical engineering at all or software." *Id.* at 25:24-26:4. Ms. Engarto is also not an attorney. *Id.* at 25:19-23. Although Ms. Engarto is not independently qualified to assess whether Corning infringes the patents-in-suit on either a technical or legal level, according to Corning it ████████████████████████████████████ ████████████████████

████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ *Id.* at Ex. B at 14-15.

Corning's reliance on ██████████████████████████████ ██████████████████████████████ as it is indicative of whether Corning's ongoing infringement is egregious. ██████████████████████████████████████ ████████████████████████████████████████████████████ *Id.* at Ex. G at 30:24-31:24. During her deposition, however, it became clear that ██████████████

1

2

3   *Id.* at 32:11-16

4

5   Instead, Ms.

6   Engarto testified that

7

8

9

10   *Id.* at Ex. G at 27:5-25 (emphasis added). Ms. Engarto confirmed that

11   *Id.* at Ex. G at 33:19-34:6

12   In other

13   words, Ms. Engarto

14   *Supra* II.C.1. Ms. Engarto's

15

16

17

18

19

20   Szpajda Decl. Ex. G at 33:19-34:6.

21   Ms. Engarto also testified

22   *Id.* at 28:18-29:13,

23   30:11-23. Here too her analysis was inadequate.

24

25   *Id.* at 64:22-67:1. Ms. Engarto, however,

26

27   *Id.* at 65:17-67:1.

28

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████ *Id.* at 67:22-69:19.[6]

In sum, Corning's decision to continue selling the accused product after learning of the patents-in-suit is based on the purportedly subjective good-faith belief of a non-technical, non-legal Corning employee who failed to meaningfully analyze the claims of the asserted patents and failed to have an adequate analysis performed for her by her team.

## III.   LEGAL ARGUMENT

### A.   Dali Sufficiently Pleads Willfulness in the SAC

#### 1.   Legal standard.

In deciding a Rule 12(c) motion for judgment on the pleadings, the standard is "substantially identical" to the standard for a motion to dismiss under Rule 12(b)(6). *Chavez v. U.S.* 683 F.3d 1102, 1108 (9th Cir. 2012). The principal difference between Rule 12(b)(6) and 12(c) motions "is the time of filing." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). In deciding either type of motion, the Court must accept as true all factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A claim can be dismissed only if there is "no cognizable legal theory" for the claim or where there is "an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A complaint must state a claim that is "plausible on its face," but need not establish that the claim is "probable." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To assess the plausibility of a complaint, the Court construes factual allegations in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). The complaint "does not need detailed factual allegations" to state a claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

---

[6] Though Mr. Montgomery in his deposition ████████████████████████ ████████ (Szpajda Decl. Ex. F at 201:5-12), Ms. Engarto's testimony ████████████████████████████████████████████████ Corning likewise produced no such document—or any other advice of counsel—in connection with its obligations under Patent L.R. 3-7. It appears Corning is attempting to preserve its witnesses' ability to testify at trial that ████████████████████████████████████ Corning appears to be attempting an end run around Patent L.R. 3-7, and Dali reserves the right to address this inconsistency at the appropriate time.

1   Likewise, a plaintiff that properly states a claim is not limited to the precise facts set forth in the

2   complaint to prove that claim. *Id.* at 563 ("once a claim has been stated adequately, it may be supported

3   by showing any set of facts consistent with the allegations in the complaint."). A patent

4   infringement plaintiff "does not have to prove willfulness at the pleading stage, although they should

5   allege more than a one-sentence prayer for willfulness relief under Section 284." *Straight Path IP Grp,*

6   *Inc. v. Apple Inc.*, No. C 16-03582 WHA, 2017 U.S. Dist. LEXIS 146751 at *12-13 (N.D. Cal. Sep. 9,

7   2017) (internal quotations omitted).

8                    **2.      Dali's SAC contains detailed allegations of willfulness.**

9                         **a)      Corning's actual pre-suit knowledge of the patents-in-suit.**

10         Based on Corning's own admissions during discovery, the SAC alleges that Corning had actual

11   pre-suit knowledge of each asserted patent. ECF No. 109 ¶¶ 36-39; *see also supra* II.C. ████

12   ████████████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████ *supra* II.C.1, and Corning cannot dispute that it

14   had actual, pre-suit knowledge of each of the patents-in-suit. *Compare* Szpajda Decl. Ex. B at 6-10

15   (Corning learned of the '358 patent on October 14, 2016; the '261 patent on April 8, 2020; and the

16   '454 patent on April 15, 2020) *with* ECF No. 7 (showing that filing date of FAC, when Dali first

17   asserted '358, '261, and '454 patents against Corning, is April 30, 2020).

18         Citing no authority in support and seeking to avoid its admissions, Corning purports to define

19   "suit" in "pre-suit knowledge" to mean the date when the original Complaint was filed, as opposed to

20   the date on which the patents were first asserted. Corning makes this argument because Dali first sued

21   Corning on December 30, 2019. But none of the patents-in-suit was included in the original

22   Complaint; each one was first asserted in the FAC on April 30, 2020—i.e., **after** Corning learned of the

23   patents first asserted in the FAC. *Compare* ECF No. 1 *with* ECF No. 7. And despite Corning's

24   argument that "the case law makes clear" that "pre-**suit** knowledge" means before the original

25   Complaint was filed as opposed to when the relevant patents were first asserted (ECF No. 124 at 4),

26   Corning cites no authority whatsoever in support of its argument. In fact, the opposite is true. *See*

27   *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-RGA-CJB, 2021 U.S.

28   Dist. LEXIS 95947, at *24, n.12 (D. Del. May 20, 2021) ("By 'pre-suit knowledge,' the Court is

referring to knowledge existing prior to the first date on which Plaintiffs filed a pleading that asserted the particular patent-in-suit against the CERT Defendants. With regard to the original asserted patents, that date is the date of the filing of the original Complaint (i.e., July 17, 2019). With regard to the newly-asserted patents, that date is the date of the filing of the FAC (i.e., July 15, 2020).")*, overturned in part on other grounds in *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-cv-1334-RGA, 2021 U.S. Dist. LEXIS 183032, at *3 (D. Del. Sept. 24, 2021).

No authority supports Corning' position, and for good reason. Corning's argument contradicts hornbook law, which holds that an amended complaint "supersedes the original, the latter being treated thereafter as non-existent." *Ezonics Corp. v. Primax Elecs., Ltd.*, C 04-5370 MMC, 2005 U.S. Dist. LEXIS 48148 at *1 (N.D. Cal. Apr. 13, 2005), citing *Bullen v. De Bretteville*, 239 F. 2d 824, 833 (9th Cir. 1956), cert. denied, 353 U.S. 947, 77 S. Ct. 825, 1 L. Ed. 2d 856 (1957) (overruled on other grounds); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) ("the general rule is that an amended complaint supersedes the original Complaint and renders it without legal effect") (overruled on other grounds); *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) ("it is well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (cleaned up). The fact that the original Complaint was on file before Corning learned of two of the three patents-in-suit is immaterial.

### b)    Corning's egregious conduct supports a finding of willfulness.

Dali also alleges that Corning's conduct is egregious because—despite the parties' long history during which Corning first learned of Dali's extensive patent portfolio through earlier due diligence efforts, and Corning's actual pre-suit knowledge of each of the patents-in-suit—Corning continued to sell the accused product and develop other products that infringe Dali's patents. ECF No. 109 ¶¶ 36, 41-63. For example, the SAC alleges that "Corning did nothing to ensure that the products acquired as part of the SpiderCloud acquisition did not infringe Dali's patents," *id.* ¶ 67, remained "willfully blind as to whether it infringed the patents-in-suit," *id.* ¶ 41, and "continues to sell the accused SpiderCloud products that infringe Dali's patents without authorization." *Id.* ¶ 73. When taken as true and construed in the light most favorable to Dali, as the Court must, these allegations are more than sufficient to plead willful infringement. *Erickson*, 551 U.S. at 94; *Cahill*, 80 F.3d at 337-338; *Halo Elecs., Inc. v.*

*Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) ("there is 'no precise rule or formula' for awarding damages under §284"); *SRI Int'l, Inc. v. Cisco Sys.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) ("[I]t was not our intent to create a heightened requirement for willful infringement. . . . under *Halo*, the concept of willfulness requires a jury to find no more than deliberate or intentional infringement.") (cleaned up).

Post-*Halo*, several cases in this District have denied Rule 12(c) motions premised on similar or even weaker fact patterns, and therefore support denying Corning's motion here. For example, in *Corephotonics v. Apple,* the complaint alleged that Corephotonics disclosed its technology and indicated it was seeking future patent protection, and generally informed Apple of its patent portfolio. *Corephotonics, Ltd. v. Apple, Inc.*, No. 17-CV-06457-LHK, 2018 U.S. Dist. LEXIS 170408, at *23 (N.D. Cal. Oct. 1, 2018). Additionally, the *Corephotonics* complaint alleged that Apple had actual notice of one of the four patents-in-suit because it had cited that patent in prosecution of Apple patents. The court held that "Apple was at least willfully blind to a high risk that it was infringing Corephotonics' patents" and therefore denied Apple's motion to dismiss the willfulness claim. *Corephotonics*, *Id.* at *27. Post-*Halo*, courts have recognized that willful blindness can satisfy the knowledge requirement for willful infringement. *See id.* at *25-26; *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 774, 131 S. Ct. 2060, 2073 (2011). And in *Corephotonics* the court further recognized that actions taken to "avoid confirming a high risk that Apple was infringing the Asserted Patents that had then issued" constituted egregious behavior. *Corephotonics*, 2018 U.S. Dist. LEXIS 170408 at *28. The sufficient facts alleged in the *Corephotonics* complaint do not rise to the level of those alleged in Dali's SAC, in which Corning had actual knowledge of the patents-in-suit and deliberately avoided learning whether the accused product infringed the patents-in-suit and continued selling it anyway. *See supra* II.A. Because Dali's SAC contains more specific allegations regarding knowledge, Corning's Rule 12(c) motion should be denied for the same reasons the *Corephotonics* court denied Apple's motion to dismiss.

Additionally, in *Straight Path IP Group, Inc. v. Apple Inc.,* the complaint did not include a separate claim for relief for willful infringement, but instead requested in the prayer for relief "all appropriate damages under 35 U.S.C. § 284" and alleged that Apple "was at the very least willfully blind to the infringing result of its active inducement of its customers and/or end users to making

infringing point-to-point connections" and "took no steps to prevent infringement by its customers and/or end users." No. C 16-03582 WHA, 2017 U.S. Dist. LEXIS 146751, at *11-12 (N.D. Cal. Sept. 9, 2017). The court held that Straight Path IP had sufficiently pled willfulness by alleging that Apple was aware of the asserted patents, and nonetheless continued to sell the accused products. *Id.* at *13. These are similar to the allegations in Dali's SAC: actual knowledge of the patents-in-suit; Corning "did nothing to ensure" that the accused products did not infringe the patents; and continued sale of the accused products. ECF No. 109 ¶¶ 36-40, 67, 73. Dali pleads more facts alleging infringement than the *Straight Path IP* complaint and as such, sufficiently pleads willfulness.

And in the same *Finjan* litigation relied on by Corning, *infra* III.A.3, defendant filed a renewed motion to dismiss the second amended complaint allegedly because it failed to sufficiently plead willfulness. *Finjan, Inc. v. Cisco Sys.*, No. 17-cv-00072-BLF, 2018 U.S. Dist. LEXIS 239284, at *6 (N.D. Cal. Feb. 6, 2018). The court denied defendant's motion for reasons that are instructive here. The court ruled that the second amended complaint in that action "contains factual allegations from which it can be inferred that Cisco valued Finjan's technology and actively learned about the technology, for example, by sending a representative to Finjan's board meetings and attending a presentation" and "Cisco also received on multiple occasions information about Finjan's patents" over the course of the parties' investment relationship" and thus "the SAC's allegations allow a reasonable inference to be drawn that Cisco subjectively knew that selling the accused products infringes the Asserted Patents and that such conduct went beyond 'typical infringement.'" *Id.* at *25-26. These facts are strikingly similar to those present here, and the Court's conclusion should be the same.

Finally, several *Read* factors present in the SAC demonstrate that egregious misconduct was properly pled. *Read v. Portec* provides several factors indicative of misconduct serious enough to warrant enhanced damages, e.g., for willfulness. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992). For example, factor (1) "whether the infringer deliberately copied the ideas or designs of another" is expressly pled in the SAC: "unless Corning is enjoined from infringing Dali's patents, Corning will continue developing products that incorporate Dali's extensively patented technologies" (ECF No. 109 ¶ 72) provides an example of *Read* factor (1). *Read* factor (2) "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-

faith belief it was not infringed" is also pled in the SAC: after pleading pre-suit knowledge of each patent-in-suit, Dali alleges "Corning did nothing to ensure" that the accused products did not infringe Dali's patents. *Id.* ¶ 67. *Read* factor (4) "defendant's size and financial condition" favors enhancement because Corning is a multinational corporation with revenues over $10 billion and employs over 50,000 people, whereas Dali is over a thousand times smaller. *Read* factor (7) "remedial action by the defendant" is also pled in the SAC showing that Corning has taken no remedial action. *Id.* ¶¶ 67, 72-73. Thus, Dali pleads several *Read* factors that demonstrate Corning's egregious misconduct.

### 3.    The cases relied on by Corning are readily distinguishable.

Each case cited by Corning is distinguishable. Corning cites *Finjan, Inc. v. Cisco Systems*, but the complaint in that action did not allege direct knowledge of the patents-in-suit but rather only collaboration among the parties and general knowledge of Finjan's patent portfolio: "the FAC never ties this general knowledge of Finjan's patent portfolio to the Asserted patents." No. 17-cv-00072-BLF, 2017 U.S. Dist. LEXIS 87657, at *12 (N.D. Cal. June 7, 2017). Dali's SAC discusses the relationship of the parties in relation to collaboration and potential acquisition of Dali by Corning to establish the context of the relationship, which is relevant to Corning's subjective intent under *Halo*. But then Dali alleges actual pre-suit knowledge of the patents-in-suit after Corning admitted to it in discovery. ECF No. 109 ¶¶ 36-39. Because the allegations of willfulness in Dali's SAC include specific allegations of knowledge of the patents, *Finjan* does not apply. Moreover, unlike the *Finjan* complaint that was also found to lack any allegations of egregious conduct beyond infringement of the patents, Dali's SAC contains several examples of such misconduct. *Cf. Finjan*, 2017 U.S. Dist. LEXIS 87657 at *14-15. According to *Halo* a claim for willfulness requires a pleading of some form of egregious conduct that has been described as "deliberate" among other things. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1937 (2016). Dali's SAC alleges egregious conduct. *See* ECF No. 109 ¶¶ 35, 40, 41, 67, 71, 73; *supra* II.A. Taking these examples as true, Dali has sufficiently pled Corning's egregiousness, and therefore Corning's Rule 12(c) motion should be denied.

Also, the cases cited by Corning to suggest that Dali has failed to demonstrate "egregious" behavior are also distinguishable, as each one relies on the premise—not present here—that merely alleging knowledge of a patent does not suffice to allege knowledge of infringement of that patent.

Here, Dali pleads much more than knowledge and continued infringement; indeed, Dali recites the parties' long history, Corning's due diligence investigation of both Dali and SpiderCloud, and Corning's discovery of the patents-in-suit prior to their assertion. ECF No. 109 ¶ 35, 40, 41-55, 67. These allegations of willful blindness to infringement of the patents-in-suit have been borne out by discovery, which shows Corning's failure to properly analyze the patents upon becoming aware of them and deliberate decision to continue selling the accused product. *See supra* II.C. In addition, in stark contrast to the present case, there's no indication in any of the cases cited by Corning that defendant had admitted to any relevant conduct in discovery.

In light of those facts, each of the cases cited by Corning is inapposite. Corning cites *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103 WHA, 2021 U.S. Dist. LEXIS 194462, at *4 (N.D. Cal. Oct. 7, 2021), for the proposition that "deliberate or intentional infringement" requires pleading facts alleging "knowledge of infringement" (ECF No. 124 at 5).[7] There, plaintiff pled only knowledge of the patents and continued infringement, which the court found was insufficient to plead pre-suit willfulness by the defendant. *MasterObjects*, 2021 U.S. Dist. LEXIS 194462 at *11. In *MasterObjects*, however, the court expressly found that plaintiff had not sufficiently alleged defendant "willfully blinded itself to infringement" of the patent because it was limited to "a conclusory sentence generally alleging willful blindness as to all the patents-in-suit"—i.e., including patents for which plaintiff did not seek enhanced damages. *Id.* at *6, 16. Dali pleads much more. ECF No. 109 ¶ 35, 40-41, 67. Likewise, *WiNet Labs LLC v. Apple, Inc.*, in which the court found that "[t]he FAC contains no specific factual allegation about Defendant's subjective intent or any other aspects of Defendant's behavior that would suggest Defendant acted 'egregiously,'" is distinguishable for the same reason. *See* No. 5:19-cv-02248-EJD, 2020 U.S. Dist. LEXIS 12138 at *13-14 (N.D. Cal. Jan. 24, 2020). Similarly, in *Fluidigm Corp. v. IONpath, Inc.*, C 19-05639 WHA, 2020 U.S. Dist. LEXIS 12154 (N.D. Cal. Jan. 24, 2020), plaintiff sent defendant a single pre-suit letter notifying defendant of a patent's issuance and nothing more. *Id.* at *8-9. The court found that "[b]are allegations of knowledge of a patent do not

---

[7] *MasterObjects* also noted that "[s]ubjective willfulness—when the alleged infringer acted despite a risk of infringement that was either known or so obvious it should have been known—can support an enhanced damages award." 2021 U.S. Dist. LEXIS 194462 at *4.

support an inference of knowledge of alleged infringement." *Id*. Moreover, the complaint did not allege "any egregious conduct." *Id.* at *15. *Fluidigm* is thus distinguishable for the same reasons as *MasterObjects* and *WiNet*.[8] In *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-cv-03848-RS, 2017 U.S. Dist. LEXIS 168269 at *18-19 (N.D. Cal. Oct. 11, 2017), which Corning cites for the same proposition, the court declined to find that selling a newer version of a product that was previously found to infringe automatically constituted egregious conduct. *Id.* Corning does not explain what relevance *XpertUniverse* has here, nor does it appear to have any. Finally, Corning cites *SRI Int'l, Inc. v. Cisco Systems*, 930 F.3d 1295, 1309-1310 (Fed. Cir. 2019) for this same proposition, without acknowledging that—two years later—the Federal Circuit reversed the result and reinstated the district court's original award of enhanced damages. *SRI Int'l,* 14 F.4th at 1331 ("Because we reinstate the jury's willfulness verdict, we likewise restore the district court's award of double damages in *SRI I*.").

The other cases cited by Corning are similarly unavailing. In *Fortinet, Inc. v. Forescout Technologies, Inc.*, the court dismissed a boilerplate willful infringement claim "pled in a single paragraph, repeated for each patent." 20-cv-03343-EMC, 2020 U.S. Dist. LEXIS 204580 at *42-43 (N.D. Cal. Nov. 2, 2020). In *Google LLC v. Princeps Interface Technologies LLC*, plaintiff cited only evidence that defendant had designed around its patent as evidence of egregious conduct, but the court found that counterproductive because "[i]f Google implemented this change in response to Princeps II's claims of infringement as a design around, this would tend to help rather than hurt Google's case." No. 19-cv-06566-EMC, 2020 U.S. Dist. LEXIS 52753, at *9 (N.D. Cal. March 26, 2020). In *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1137 (N.D. Cal. 2018), plaintiff did not plead pre-suit knowledge in its boilerplate allegations. In *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021), the Federal Circuit did not consider the pleading standard for willful infringement, but rather affirmed a district court's granting of judgment as a matter of law of no willful

---

[8] Moreover, even where pre-suit willfulness was insufficiently pled, courts may still allow post-suit willfulness claims to proceed. *See, e.g., MasterObjects*, 2021 U.S. Dist. LEXIS 194462 at *16-18 (citing defendant's post-litigation misconduct including evasive discovery practices as making it "reasonable to infer that [defendant's] infringement is intentional"); *Fluidigm*, 2020 U.S. Dist. LEXIS 12154 at *15-16 (ruling that patent owners "may move for leave to amend" should "evidence of egregious conduct come to light, post-filing").

1    infringement after plaintiff's evidence at trial came up short. *Id.*

2         This case is more like *Arctic Cat Inc. v. Bombardier Recreational Products*, 876 F.3d 1350

3    (Fed. Cir. 2017)—cited, albeit without explanation, by Corning—in which the Federal Circuit affirmed

4    the jury's willfulness finding. *Id.* at 1371 ("the district court found substantial evidence demonstrated

5    that [defendant] knew about the patents before they issued, conducted only a cursory analysis of the

6    patents, waited years before seeking advice of qualified and competent counsel, and unsuccessfully

7    tried to buy the asserted patents through a third party."). Accordingly, the Court should dismiss

8    Corning's motion because Dali has pled a plausible claim for willful infringement.

9    **B.    Alternatively, The Court Should Convert Corning's Rule 12(c) Motion into a
       Motion for Summary Judgment and Deny It**

10        Corning's Rule 12(c) motion (a) relies on matters outside of the pleadings and (b) improperly

11   invites the Court to ignore extensive evidence developed during discovery that refutes Corning's

12   argument that Dali's willful infringement theory is unsupported by facts. For the reasons detailed

13   below, the Court should treat Corning's motion as a motion for summary judgment and deny it.

14   **1.    Legal standard.**

15        Corning's reliance on matters outside the pleadings in its opening brief warrant treating

16   Corning's Rule 12(c) motion as a motion for summary judgment. *See supra* II.B. Under Federal Rule

17   of Civil Procedure 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings

18   are presented to and not excluded by the court, the motion ***must*** be treated as one for summary

19   judgment under Rule 56." Fed. R. Civ. Pro. 12(d) (emphasis added); *Pine v. City of Oakland*, No. 19-

20   cv-02136-AGT, 2020 U.S. Dist. LEXIS 87064, at *21 (N.D. Cal. May 16, 2020) ("The Court cannot

21   consider these extraneous materials without converting Defendants' motion to dismiss into a motion

22   for summary judgment."); *Brooke v. Woodside Hotel Grp., Ltd.*, 20-05821 WHA, 2020 U.S. Dist.

23   LEXIS 215038 at *5 (N.D. Cal. Nov. 17, 2020) ("[D]efendant hotel offers a declaration purporting to

24   establish full compliance with the ADA. The declaration, as stated, is not subject to judicial notice or to

25   the incorporation-by-reference doctrine. The declaration triggers conversion of defendant's Rule

26   12(b)(6) motion to one for summary judgment."); *Ho*, 2019 U.S. Dist. LEXIS 96295 at *13, n.3.

27

28

Rule 12(d) serves an important policy goal, which is applicable here. It is "designed to ensure that the Court 'direct[s] a pretrial motion to the vehicle most appropriate for its resolution, ensuring that the motion is governed by the rule specifically designed for the fair resolution of the parties' competing interests at a particular stage of the litigation.'" *Abbott Labs. v. Frank*, 17-CV-6002 (CBA) (LB), 2018 U.S. Dist. LEXIS 235216, at *2-3 (E.D.N.Y July 2, 2018), citing *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006) (explaining policy rationale for converting motions to dismiss to motions for summary judgment). And there can be no prejudice from treating a Rule 12(c) motion as a motion for summary judgment; the Ninth Circuit has held that a represented party that submits matters outside the pleadings and invites consideration of them "has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment." *Grove v. Mead School Dist.*, 753 F.2d 1528, 1533 (9th Cir. 1985).

### 2.   The Court should deny Corning's motion.

Because the "subjective willfulness" of a patent infringer, intentional or knowing, may warrant enhanced damages, "without regard to whether his infringement was objectively reckless," *Halo*, 136 S. Ct. at 1933, determining willfulness "is a fact-based endeavor." *Elbit Sys. Land v. Hughes Network Sys., LLC*, 2017 U.S. Dist. LEXIS 94495, at *16 (E.D. Tex. June 20, 2017). Under Rule 56(c), summary judgment is proper only if there is no genuine dispute as to any material fact such that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Moreover, the Court should not assess credibility, weigh evidence, or draw inferences from facts when ruling on summary judgment because these tasks are jury functions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). Here, because (a) Corning admits pre-suit knowledge of each patent-in-suit; (b) there are disputed material facts regarding the egregiousness of Corning's conduct in continuing infringement after acquiring that knowledge; and (c) the trier of fact must still assess witnesses' credibility, weigh evidence, and draw necessary inferences to determine subjective willfulness, the Court should deny Corning's motion.

### a)   Corning's actual pre-suit knowledge of the patents-in-suit.

As detailed above, the SAC establishes Corning's pre-suit knowledge. *Supra* III.A.2.a.

b)  **Corning's egregious conduct support a finding of willfulness.**

The conduct admitted to by Corning's employees more than suffices to establish both pre-suit knowledge of each of the patents-in-suit and egregious conduct. *Supra* II.A; *see also* III.A.2.b. That is all that is needed to establish willfulness. *SRI Int'l, Inc.*, 14 F.4th at 1330. Where, as here, resolution of egregious conduct depends on the resolution of disputed facts, summary judgment is not appropriate. *See Cyntec Co. v. Chilisin Elecs. Corp.*, No. 18-cv-00939-PJH, 2020 U.S. Dist. LEXIS 163602, at *47 (N.D. Cal. Sept. 8, 2020) ("Summary judgment is not appropriate because resolution of any egregious conduct depends on the resolution of a disputed fact.").

Corning cannot credibly dispute that if the Court considers the evidence presented above then it must deny Corning's motion. Courts have refused to grant summary judgment of no willfulness under similar facts. *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 240 F. Supp. 3d 605, 618 (E.D. Tex. 2017) (denying summary judgment of no willfulness where party failed to provide sufficient evidence of "subjective beliefs of its decisionmakers"); *Velocity Patent LLC v. FCA US LLC*, 319 F. Supp. 3d 950, 971-72 (N.D. Ill. 2018) (where defendant "made no effort to determine if the accused features infringed on the patent," did "not have a formal process for assessing infringement," and where "defenses are not based on good faith assessments of the case," court denied summary judgment of no willfulness); *Elbit Sys. Land*, 2017 U.S. Dist. LEXIS 94495 at *16-17 ("But Hughes has not offered other summary judgment evidence regarding its executives' subjective beliefs. Given the state of the evidence, the Court cannot conclude that it would be unreasonable for a jury to find Hughes knew the asserted patents were valid and infringed."); *Baxalta Inc. v. Bayer Healthcare LLC*, 513 F. Supp. 3d 426, 461 (D. Del. 2021) (denying summary judgment of no willfulness, finding "Plaintiffs assert that Bayer did not attempt to design around the patents-in-suit despite pre-suit knowledge of, at a minimum, certain Bossard Patents. . . . [E]ven taken alone, Defendant's post-suit conduct with respect to these patents raises an issue of material fact that must be left to the jury.") (citations omitted).

3.  **Pending discovery is relevant to Dali's willful infringement claim.**

All but admitting that its motion invites the Court to weigh competing facts, Corning argues that Dali lacks "***facts***" to prove willfulness at trial. ECF No. 124 at 7 (emphasis in original). As detailed above, Dali disputes this. *See supra* II.A; III.A; III.B.2. But if the Court concludes that the

factual record is not yet fully developed, Rule 56 expressly provides for when facts are unavailable to the non-movant, and provides the Court with options such as "deferring considering the motion or deny it" or "allowing time to . . . take discovery." Fed. R. Civ. P. 56(d). Rule 12(d) likewise supports granting additional reasonable discovery to meet the issues raised by the extraneous material. *Brooke*, 2020 U.S. Dist. LEXIS 215038 at *5 (noting Rule 12(d) includes requirement that parties be given "the opportunity to take reasonable discovery to meet the issues raised by the extraneous material").

Here, in addition to the above evidence of egregious conduct, pending discovery is likely to further develop the record. Although fact discovery formally closed on November 22, 2021, ECF No. 108, the parties have requested, and the Court has granted, multiple requests to extend the deadline to move to compel to allow for the deposition of certain witnesses who have not been made available by Corning. ECF No. 126 at 1. Of relevance to willful infringement, ██████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████ and (2) Corning has delayed producing for deposition a witness—Mr. Mahendran—██████████████████████████ ████████████████████████ and whose deposition Corning says will address Corning's purported but unproven disabling of the infringing features. *See* Szpajda Decl. Ex. S.

First, Corning has made clear through its conduct during litigation that it understands it infringes Dali's patents, and ██████████████████████████████████ ████████████████ *See* Szpajda Decl., Ex. T at 11-15 ██████████████ ██████████████████████████████. Corning, however, has failed to produce the documentary evidence that would allow Dali to confirm that bare assertion. Further, ██████████ ████████████████████████████████████████████████ is in serious doubt, and indeed, appears contrary to the testimony of Corning witnesses. During the November 17, 2021 deposition of Mr. Cune, Corning's Vice President of Commercial Technology, Mr. Cune testified ██████████ ████████████████████████████████████████████████████████████ ██████████████████████ *See* Szpajda Decl. Ex. H at 102:15-106:7. And during the February 5, 2022 deposition of Arthur King, a recently departed Corning employee with knowledge of the

1  SpiderCloud products, Mr. King █████████████████████████

2  ██████████████████████████████████████████████████

3  ████████████████████████████████████████████████ *Id.*

4  at Ex. U at 98:13-99:6 ██████████████████████████████

5  ██████████████████████████████████████████████████

6  ███████████████████████████████████████ That is because—as

7  Mr. Cune testified—████████████████████████████████

8  ██████████████████████ *Id.* at 99:23-100:11. Mr. King testified

9  that ██████████████████████████████████ *Id.* at

10  101:1-5. ███████████████████████████████████████████

11  ██████████████████████████████████████████████████

12  ██████████████████████████████████████████████████

13  ██████████████████████████████████████████████████

14  ██████████████████████████████████████████████████

15  ████████████████████████████████████ *Id.* at 102:15-22.[9] The

16  fact that Corning appears sufficiently concerned about infringement to claim ██████

17  ████████████—while at the same time conducting itself in a way that raises serious doubt ████

18  ████████████████████████—is highly relevant to Dali's allegations concerning

19  Corning's ongoing willful infringement of the patents-in-suit.

20      Second, Corning has delayed producing Mr. Mahendran for deposition. Mr. Mahendran, a

21  Corning engineer with technical knowledge of the accused products, is held out by Corning as "the

22  best witness to resolve any confusion [about Corning's accused products] you may have." *Id.* at Ex. S

23  at 2. Mr. Mahendran ████████████████████████████████████████

24  ██████████████████████████████████████████████████

25  ████████████████████████ *Id.* at Ex. G at 30:24-31:24. Corning has yet to make Mr.

26  ──────────────

27  [9] Dali has subpoenaed the carriers to verify Corning's allegations, and those depositions remain

28  outstanding, pending further discovery responses and testimony from Corning. *See* ECF No. 123 at 1, n.1.

Mahendran available for deposition nearly four months after the close of fact discovery. *Id.* at Ex. V.

Because the discovery at issue in these pending disputes is relevant to the disposition of Corning's motion on the merits, then Dali respectfully requests that if the Court is not inclined to deny Corning's motion outright on the present record, then the Court should at least allow the parties to complete that discovery and submit supplemental briefing before ruling on Corning's motion.

### C.   Alternatively, Dali Should Be Given Leave to Amend to Add Facts Corning Admitted in Discovery

Even if the Court were to accept Corning's arguments regarding the sufficiency of the willfulness allegations in the SAC and decline to convert Corning's motion to a motion for summary judgment, the proper result would be to grant Dali's leave to amend to address those defects. *See Nat'l Funding, Inc. v. Commercial Credit Counseling Servs.*, 817 Fed. App'x 380, 386 (9th Cir. 2020) (denial of leave to amend second amended complaint was abuse of discretion); *Calcaterra v. Garrabrants (In re Bofi Holding, Inc. S'holder Litig.)*, 848 Fed. App'x 234, 238 (9th Cir. 2021) (denial of further leave to amend was abuse of discretion). The Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a)(2); *see also Eminence Capital, LLC v. Aspeon Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (policy of granting leave to amend "is to be applied with extreme liberality") (quotation omitted). In the Ninth Circuit, courts apply a presumption in favor of granting leave to amend and consider five factors in evaluating the decision: undue delay, bad faith or dilatory motive, repeated failure to cure, undue prejudice to the opposing party, or futility. *Calcaterra*, 848 Fed. App'x at 238. Here, each of these factors favors granting leave to amend.

First, Corning cannot credibly dispute that willful infringement would be adequately pled if Dali were to amend the SAC to include the voluminous evidence cited above. *Supra* II.C. As such, granting Dali leave to amend the SAC to add these facts would not be futile. *See Nat'l Funding.*, 817 Fed. App'x at 386 ("[t]he underlying record reflects that National Funding could easily plead such information if given leave to amend. Because it is not clear that further amendment of these claims would be futile, the district court abused its discretion in denying leave to amend[.]").

Second, Corning would not be prejudiced by any such amendment. Prejudice is the "touchstone of the inquiry" under Rule 15(a). *See Finjan, Inc. v. Juniper Network*, C 17-05659 WHA, 2018 U.S.

Dist. LEXIS 239282, at *4 (N.D. Cal. July 19, 2018) (granting opposed motion for leave to amend to file second amended complaint). Such prejudice can be shown when new allegations "would totally alter the basis of the action." *Id.* (citation omitted). Here, Corning cannot show prejudice if Dali is permitted to file an amended complaint to include the facts it learned through discovery after filing the SAC. Both parties took extensive discovery relating to Dali's theory of willful infringement. *See supra* II.C. Nothing about the basis of the action would be altered by adding facts already learned through discovery to cure any alleged deficiencies in the SAC. *See Finjan*, 2018 U.S. Dist. LEXIS 239282 at *5 (weighing against finding of prejudice fact that parties "already engaged in significant discovery" on subject matter plaintiff sought to add to amended complaint).

Third, Dali amended the original Complaint the first time to assert different patents, and the fact that the Court has already granted Dali leave to amend its willfulness allegations one previous time should not weigh against Dali. Courts in this District routinely grant leave to amend a second time. *XimpleWare, Inc. v. Versata Software, Inc.*, 5:13-cv-05161-PSG, 2014 U.S. Dist. LEXIS 165060 at *14-15, 33-35 (N.D. Cal. Nov. 25, 2014) (allowing plaintiff to seek leave to amend second amended complaint after having previously granted leave to amend); *see also Nat'l Funding*, 817 Fed. App'x at 386; *Calcaterra*, 848 Fed. App'x at 238.

Finally, Dali's request is not made in bad faith, nor would allowing Dali to amend the SAC to add facts learned during discovery cause undue delay. Both parties have extensively developed the factual record on willful infringement. *Supra* II.C. Allowing Dali to amend would not require reopening discovery or otherwise modifying the case schedule.

Because each of these factors strongly weigh in favor of granting leave to amend to cure any deficiencies in the SAC by incorporating the facts detailed above, *supra* II.C, the Court should grant Dali leave to amend if it otherwise grants Corning's motion.

## IV.   <u>CONCLUSION</u>

For the reasons detailed above, Dali respectfully requests that the Court deny Corning's motion.

Dated: March 9, 2022

*/s/ Stefan Szpajda*

**FOLIO LAW GROUP PLLC**

CRISTOFER I. LEFFLER (SBN 208129)
cris.leffler@foliolaw.com
DAVID D. SCHUMANN (SBN 223936)
david.schumann@foliolaw.com
MICHAEL C. SAUNDERS (SBN 270414)
mike.saunders@foliolaw.com
CLIFF WIN, JR. (SBN 270517)
cliff.win@foliolaw.com
PALANI P. RATHINASAMY (SBN 269852)
palani@foliolaw.com
STEFAN SZPAJDA (SBN 282322)
stefan@foliolaw.com
ALDEN K. LEE (SBN 257973)
alden.lee@foliolaw.com
STEVEN SKELLEY (*Pro Hac Vice*)
steve.skelley@foliolaw.com
1200 Westlake Ave. N., Suite 809
Seattle, WA 98109
Tel: (206) 880-1802

JOSEPH M. ABRAHAM (*pro hac vice*)
joseph.abraham@foliolaw.com
13492 Research Blvd., Ste. 120, No. 177
Austin, TX 78750
Tel: (737) 234-0201

**BARTKO ZANKEL BUNZEL & MILLER**

BRIAN A. E. SMITH (SBN 188147)
bsmith@bzbm.com
JOSEPH J. FRARESSO (SBN 289228)
jfraresso@bzbm.com
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Tel: (415) 956-1900
Fax: (415) 956-1152

*Attorneys for Plaintiff Dali Wireless, Inc.*