1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

DALI WIRELESS, INC.,

8

Plaintiff,

9

v.

10

CORNING OPTICAL
COMMUNICATIONS LLC,

11
12

Defendant.

Case No. 20-cv-06469-EMC

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS AND
GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO
STRIKE**

Docket No. 157

13
14

Plaintiff Dali Wireless, Inc. ("Dali") filed suit against Defendant Corning Optical

15

Communications LLC ("Corning") for willful infringement of U.S. Patent No. 10,433,261 ("the

16

'261 patent"), U.S. Patent No. 9,197,358 ("the '358 patent"), and U.S. Patent No. 10,506,454 ("the

17

'454 patent") (together, "the patents-in-suit"). Docket No. 154 ("TAC"). After its First and

18

Second Amended Complaints were dismissed on the pleadings with leave to amend, Dali filed its

19

Third Amended Complaint. Now pending before the Court is Corning's combined motion to

20

strike and motion to dismiss Dali's willfulness allegations. Docket No. 157 ("MTD").

21

For the following reasons, the Court **GRANTS** Corning's Motion to Dismiss the

22

allegations of willful infringement. The Court **GRANTS IN PART** Corning's Motion to Strike as

23

to paragraph 269 of the TAC but **DENIES IN PART** the remainder of the motion.

24

## I.      FACTUAL AND PROCEDURAL BACKGROUND

25

A.      Factual Background

26

Dali is a designer and manufacturer of power amplifiers for radio frequency

27

communications for indoor and outdoor wireless coverage and capacity. TAC ¶ 4. Corning is a

28

company that acquired SpiderCloud Wireless, which developed the SpiderCloud Enterprise Radio

United States District Court
Northern District of California

Access Network ("E-RAN") system that provides in-building cellular voice and data coverage. TAC ¶¶ 4, 6. Corning now owns certain equipment and systems relating to E-RAN small cell systems, such as SpiderCloud Services and Radio nodes. TAC ¶ 272.

Dali's three patents-in-suit relate to distributed antenna systems ("DAS"). The '261 patent is entitled "Self-Optimizing Distributed Antenna System Using Soft Frequency Reuse" and was issued on October 1, 2019. TAC Exh. A. The invention is a method of determining carrier power in a communications system to address unbalanced traffic distributions inside cellular networks. *Id.* at 1:19–21, 1:34–39. The '358 patent is entitled "Method and System for Soft Frequency Reuse in a Distributed Antenna System" and was issued on November 24, 2015. TAC Exh. B. The invention relates to wireless communication systems employing "DAS utilizing Soft Frequency Reuse [SFR] or Fractional Frequency Reuse techniques" to suppress inter-cell interference in a multi-cell environment. *Id.* at 1:39–43, 9:5–20. The '454 patent is entitled "Optimization of Traffic Load in a Distributed Antenna System" and was issued on December 10, 2019. TAC Exh. C. The invention teaches a traffic monitoring and optimization DAS system for dynamically routing signals to manage the physical movement of groups of subscribers from one location to another. *Id.* at 1:17–29, 1:43–52.

Corning executives were first introduced to Dali beginning in late 2010. TAC ¶¶ 36–37. In March 2011, Corning signed a Non-Disclosure Agreement to discuss purchasing radio distribution system components from Dali. TAC ¶ 38. Later that year, Corning executives visited Dali's research and development headquarters in Vancouver, Canada, to discuss a joint project. TAC ¶ 39. In May 2012, the two parties signed a letter of intent for Dali to develop parts of a radio distribution system—specifically, DT-650 digital transport equipment—which Corning would purchase. TAC ¶ 40. Corning then performed due diligence on Dali's portfolio. TAC ¶ 41. In September 2012, the two parties entered into a License and Purchase Agreement to memorialize the letter of intent. TAC ¶ 42.

In October 2013, Corning informed Dali that it was reevaluating its involvement with DT-650 and considering beginning a new project. TAC ¶¶ 46–47. In June 2014, Corning's corporate development team visited Dali's Palo Alto offices to discuss Corning's potential acquisition of

Dali.  TAC ¶ 48.  Dali presented the company's strategy, product roadmap, and IP positioning, and allowed Corning to conduct due diligence at Dali's Vancouver research and development facility. TAC ¶¶ 48–49.  At the time, none of the three patents-at-suit had been issued.  Corning offered Dali $100M for the business and IP holdings, but negotiations were unsuccessful.  TAC ¶¶ 50–51.

In 2017, Corning acquired SpiderCloud and obtained the accused products at issue in this lawsuit—the SpiderCloud Enterprise Radio Access Network ("E-RAN") system—which it markets as small cell products.  TAC ¶¶ 2, 72, 86, 90.  As of 2022, Corning continues to sell the accused product.  TAC ¶ 222.

B.   Procedural History

Dali filed its original complaint on December 30, 2019.  In that complaint, Dali asserted U.S. Patent No. 10,159,074 ("the '074 patent") and (2) U.S. Patent No. 9,769,766 ("the '766 patent").  Docket No. 1.  In its First Amended Complaint, filed on April 30, 2020, Dali modified its infringement claims and alleged that Corning infringed its '261 patent,[1] '358 patent,[2] and '454 patent.  Docket No. 7 ("FAC").  Dali alleged that in the two parties' discussions about forming a strategic partnership and acquisition, Corning conducted due diligence on Dali's patent portfolio. FAC ¶¶ 34–36.

Corning filed its first motion for judgment on the pleadings of no willfulness under Rule 12(c).  Docket No. 84.  Corning argued that Dali failed to plead adequate pre-suit knowledge of the patents-in-suit and egregious conduct by Corning.  Docket No. 84.  The Court agreed and dismissed Dali's willfulness pleading with leave to amend.  Docket No. 104.

Dali filed its Second Amended Complaint on September 20, 2021.  Docket No. 109 ("SAC").  Dali contends that Corning's counsel Mr. Keith Montgomery learned of the '358 patent on October 14, 2016, the '261 patent on April 8, 2020, and the '454 patent on April 15, 2020—all before the April 30, 2020, filing date of the First Amended Complaint.  SAC ¶¶ 37–39.  Dali

---

[1] On November 16, 2021, the Patent Trial and Appeal Board ("Board) denied institution of Corning's inter partes review ("IPR") petition of Dali's '261 patent.  TAC ¶ 239.

[2] On September 7, 2021, the Board denied institution of Corning's IPR petition of the claims of Dali's '358 patent.  TAC ¶ 238.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   described Corning's "extensive history of monitoring Dali's patents and published applications"

2   beginning in 2010.  SAC ¶¶ 41–70.

3        Corning filed its second motion for judgment on the pleadings of no willfulness.  Docket

4   No. 124.  The Court again agreed, as there was no "affirmative duty on Corning to ensure that its

5   products did not infringe" and, furthermore, "there are no facts in the SAC that suggests that

6   Corning conducted IP due diligence which included the three patents at issue."  Docket No. 148 at

7   6, 10.  The Court dismissed again with leave to amend.  Docket No. 148 at 11.

8        Dali filed its Third Amended Complaint on June 6, 2022.  Docket No. 154 ("TAC").

9   Corning filed its third motion to dismiss on the pleadings, combined with a motion to strike a

10  handful of related allegations.  Docket No. 157 ("MTD").  The Court now addresses this motion.

## II.       LEGAL STANDARD

11

12  A.    Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

13       Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

14  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

15  complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R.

16  Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's

17  decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550

18  U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the

19  claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th

20  Cir. 2014).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the

21  pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &*

22  *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not

23  simply recite the elements of a cause of action [and] must contain sufficient allegations of

24  underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

25  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

26  990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual

27  content that allows the court to draw the reasonable inference that the Defendant is liable for the

28  misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a

1   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

2   unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

3   B.   Motion to Strike (Rule 12(f))

4          Before responding to a pleading, a party may move to strike from a pleading any

5   "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The essential

6   function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise

7   from litigating spurious issues by dispensing with those issues prior to the trial."  *Wang v. OCZ*

8   *Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v.*

9   *Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).  Motions to strike are generally disfavored.

10  *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011); *Platte*

11  *Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).  A motion to strike

12  should only be granted if the matter sought to be stricken clearly has no possible bearing on the

13  subject matter of the litigation.  *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339

14  (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other*

15  *grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("'Immaterial matter' is that which has no

16  essential or important relationship to the claim for relief or the defenses being pleaded.").

17  Statements that do not pertain to, and are not necessary to resolve, the issues in question are

18  impertinent.  *Id.*  If there is any doubt whether the portion to be stricken might bear on an issue in

19  the litigation, the Court should deny the motion to strike.  *Platte*, 352 F. Supp. 2d at 1057.  Just as

20  with a motion to dismiss, the Court should view the pleading sought to be struck in the light most

21  favorable to the nonmoving party.  *Id.*

22                    **III.      DISCUSSION**

23  A.   Dali's Willfulness Pleading

24          Dali's Third Amended Complaint fails to plead willfulness.  This Court thus grants

25  Corning's motion to dismiss the claims of willful infringement.

26          Section 284 of the Patent Act permits courts to award "damages up to three times the

27  amount found or assessed" for cases of patent infringement.  35 U.S.C. § 284.  The Supreme Court

28  has recognized that such punishment should generally be "reserved for egregious cases typified by

United States District Court
Northern District of California

1    willful misconduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016). "The sort of

2    conduct warranting enhanced damages has been variously described in our cases as willful,

3    wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—

4    characteristic of a pirate." *Id.* at 103–04.

5            To prove willful conduct, the plaintiff must show both the accused infringer's knowledge

6    of the patents and knowledge of infringement. *Id.*; *Sonos, Inc. v. Google LLC*, No. 21-cv-07559-

7    WHA, 2022 WL 799367, at *2 (N.D. Cal. Mar. 16, 2022). To later justify an award of enhanced

8    damages, the plaintiff must also show egregious behavior in addition to the elements of

9    willfulness. *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378

10   (Fed. Cir. 2020) ("The question of enhanced damages is addressed by the court once an

11   affirmative finding of willfulness has been made. It is at this second stage at which the

12   considerations of egregious behavior and punishment are relevant.") (internal citations omitted).

13           1.    Knowledge

14           In order to survive a motion to dismiss, both "knowledge of the patent and knowledge of

15   infringement must be pled with plausibility." *Sonos*, 2022 WL 799367, at *2. The complaint

16   must contain allegations that the accused infringer had specific "knowledge of the asserted

17   patent." *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). The

18   complaint must also contain allegations that "the accused infringer had a specific intent to infringe

19   at the time of the challenged conduct." *BASF Plant Sci., LP*946 F.3d 1367*, v. Commonwealth Sci.

20   & Indus. Rsch. Organisation*, 28 F.4th 1247 (Fed. Cir. 2022).

21           In its prior order, this Court explained that Dali's Second Amended Complaint failed to

22   plead actual knowledge of the patents, finding unpersuasive Dali's argument that "Corning had

23   knowledge of the patents by virtue of the prior discussion between Dali and Corning about Dali's

24   portfolio" because Dali failed to "identif[y] the specific patents during its discussions with

25   Corning." Docket No. 148, at 5–6.

26           First, Dali's Third Amended Complaint fails to show that Corning had actual knowledge of

27   the patents-at-suit. Dali's arguments presume that Corning must have known of the patents-at suit

28   because the parties engaged in a number of pre-filing communications. TAC ¶¶ 21–24. Dali

6

1    asserts that "Corning extensively examined Dali's patent portfolio and proprietary technology

2    through the guise of a strategic partnership and later potential acquisition." TAC ¶ 24. Dali

3    asserts that Corning, moreover, "spent years studying Dali and its technology, and cited Dali's

4    patents in dozens of Corning's own patents." TAC ¶ 25.

5          The vast majority of Dali's new allegations are not specific to the '261 patent, '358 patent,

6    and '454 patent. Pleadings that "simply identify every patent in [the] portfolio . . . are not

7    sufficient to constitute notice of any specific patent." *Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-CV-

8    00072-BLF, 2018 WL 7131650, at *3–4 (N.D. Cal. Feb. 6, 2018) ("*Finjan II*"). The majority of

9    the allegations merely assert that Corning had general knowledge of Dali's patent portfolio or

10   technologies. For instance:

- (¶ 24) . . . in the years leading up to its discovery of the patents-in-suit Corning extensively examined *Dali's patent portfolio and proprietary technology* through the guise of a strategic partnership and later potential acquisition. Through this process Corning acquired deep knowledge of *Dali's patent portfolio*, and even informed its senior leadership that it would "need" Dali to execute on its digital strategy.

- (¶ 35) Corning's discovery of the patents-in-suit stemmed from and related to *Corning's decade-long fascination with Dali's technology and IP*, and its practice of monitoring Dali's patent portfolio.

- (¶ 36) Corning's interest in *Dali's technology* goes back to at least 2010.

- (¶ 41) From May through July of 2012, Corning performed extensive due diligence on *Dali's portfolio*.

- (¶ 44) In April 2013, Dali and Corning discussed a broader cooperation between the two companies to include *Dali's integrated digital radio distribution platform*.

- (¶ 45) In May 2013, Dali and Corning met in Las Vegas for a demonstration of *Dali's t-Series integrated digital radio distribution platform* including its dynamic capacity allocation load-balancing technique.

- (¶ 48) On June 3, 2014, Corning's corporate development team met with Dali at its Palo Alto offices to discuss Corning acquiring Dali. Dali presented an *overview of the company's strategy, product roadmap, and IP positioning*.

- (¶ 49) On or about July 3, 2014, Corning conducted additional diligence at Dali's Vancouver R&D facility. Corning conducted

7

1   or had conducted on its behalf offsite IP diligence including an
    analysis of *Dali's patent portfolio*.

2   • (¶ 74) On information and belief, Corning continued to monitor
3     *Dali's patent portfolio* after its acquisition of SpiderCloud
      Wireless.

4   • (¶ 75) In 2019, Dali and Corning again discussed licensing
5     *Dali's patent portfolio* to Corning at the World Mobile
      Conference in Spain.

6   TAC, at 3–9 (emphases added).  Each of these allegations are directed generally to digital radio

7   distribution platform technologies or Dali's patent portfolio as a whole.  But "[m]ere knowledge of

8   a 'patent family' or the plaintiff's 'patent portfolio' is not enough."  *Sonos*, at *2.

9        In ruling on Corning's previous motion to dismiss on the pleadings, this Court compared

10  the facts here to those in *Finjan*.  Docket No. 148, at 5.  In *Finjan I*, the court dismissed the

11  plaintiff's complaint because it "did not allege direct knowledge of the patents but rather only the

12  collaboration among the parties and general knowledge of Finjan's patent portfolio."  Docket No.

13  148, at 5 (citing *Finjan, Inc. v. Cisco Sys.*, No. 17-cv-00072-BLF, 2017 U.S. Dist. LEXIS 87657,

14  at *12 (N.D. Cal. June 7, 2017) ("*Finjan I*")).  In *Finjan II*, the court found that the complaint did

15  plausibly allege knowledge because "the plaintiff alleged that the defendant issued its Annual

16  Report and Quarterly Report, which identified all of the asserted patents at issue and described the

17  issue date, expiration date, and subject matter of the asserted patents, for its investors."  Docket

18  No. 148, at 5 (citing *Finjan II*, at *6).  The Court determined that the allegations in Dali's Second

19  Amended Complaint were more akin to those in *Finjan I* than *Finjan II*.  Docket No. 148, at 6.

20  Even considering the alleged communication and negotiations between the two parties, Dali has

21  not pinpointed any facts that specifically identify the patents-at-suit having been the subject of

22  Corning's due diligence.

23       Dali's amendments do not cure this issue.  In its Third Amended Complaint, Dali includes

24  a list of 75 of Corning's patents, citing the issue date, expiration date, and titular subject matter.

25  TAC ¶¶ 123–97.  It asserts that Corning's knowledge of the patents-at-issue may be gleaned from

26  references in Corning's patents.  Mr. Montgomery, the in-house patent counsel at Corning, is the

27  counsel of record on these Corning patents.  TAC ¶ 117, 123–197.  But this list fails to further the

28  plausibility of Dali's allegations.  While a few of the 75 Corning patents do cite to the patents-at-

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1  suit, *see, e.g.*, TAC ¶¶ 158, 168 (citing the '358 patent), it does not follow that Mr. Montgomery

2  would have specific knowledge of the substance of each and every patent cited during patent

3  prosecution.  *Sonos*, at *3 (holding that the complaint must plausibly allege that "the defendant

4  had the specific intent to infringe").  During patent prosecution, patentees are incentivized to

5  broadly search for and report relevant citations to the patent examiner pursuant to their duty of

6  candor.  *See* 37 CFR § 1.56(a) ("Each individual associated with the filing and prosecution of a

7  patent application has a duty of candor and good faith in dealing with the Office, which includes a

8  duty to disclose to the Office all information known to that individual to be material to

9  patentability as defined in this section."); *see also McKesson Info. Sols., Inc. v. Bridge Med., Inc.*,

10  487 F.3d 897, 913 (Fed. Cir. 2007) (defining "materiality" as "embrac[ing] any information that a

11  reasonable examiner would substantially likely consider important in deciding whether to allow an

12  application to issue as a patent") (internal citation omitted); *Bruno Indep. Living Aids, Inc. v.*

13  *Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351 (Fed. Cir. 2005) (finding that "[a] breach of this

14  duty may constitute inequitable conduct" even if the patentee "failed to appreciate the [prior art's]

15  materiality at that time").  Given the breadth of the patents cited in the patent prosecution histories

16  of 75 patents, the scant citation alone to the patents-in-suit do not establish specific knowledge of

17  such patents.

18  Furthermore, the sheer amount of Dali's patents listed in the complaint—in addition to the

19  fact that Dali's original complaint listed a set of patents (the '074 patent and the '766 patent)

20  entirely different from those listed in the Third Amended Complaint—suggests that, at most,

21  Corning had general knowledge of Dali's technology and patent portfolio, not specific knowledge

22  of the patents-in-suit.  *See Sonos*, at *3 ("It is also not enough [to find specific knowledge] that a

23  patent might claim some features of a manufacturer's products, absent a notice letter, given the

24  vast number of issued patents.").

25  Others new allegations in the Third Amended Complaint are conclusory.  Dali's

26  amendments include allegations that:

27  • (¶ 22) Corning *had specific knowledge* of the three patents-in-suit prior to those patents' inclusion in the First Amended Complaint.

28  

9

1
2
3
4
5
6
7
8
9
10
11
12

- (¶ 27) Corning *had actual notice* of the patents-in-suit before Dali asserted them in this litigation on April 30, 2020.

- (¶ 32) On information and belief, Corning discovered the '358 Patent through its practice of monitoring Dali's patent portfolio.

- (¶ 33) On information and belief, Corning discovered the '261 Patent through its practice of monitoring Dali's patent portfolio.

- (¶ 34) On information and belief, Corning discovered the '454 Patent through its practice of monitoring Dali's patent portfolio.

- (¶ 52) Nonetheless, Corning continued to monitor Dali's patents.

- (¶ 76) As a result of the activities described above and in more detail below, Corning *had extensive knowledge of Dali's patents*, yet did not do anything to ensure it was not infringing Dali's patents at any time before April 2020.

13   TAC, at 3–9 (emphases added).  Each of these conclusory statements are unsupported by specific

14   allegations.  "Threadbare recitals of the elements of a cause of action, supported by mere

15   conclusory statements, do not suffice."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352

16   (Fed. Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  *See Celgene Corp. v. Mylan*

17   *Pharms. Inc.*, 17 F.4th 1111, 1128 (Fed. Cir. 2021) ("disregard[ing] rote recitals of the elements of

18   a cause of action, legal conclusions, and mere conclusory statements") (internal citation omitted).

19   Dali's complaint does not assert plausible allegations that Corning had specific knowledge of the

20   patents-at-suit.

21        Even if knowledge of the patents were established, Dali's Third Amended Complaint fails

22   to plausibly allege that Corning had actual knowledge of infringement.  A finding of willfulness

23   may be satisfied by "proof that the defendant acted despite a risk of infringement that was 'either

24   known or so obvious that it should have been known to the accused infringer.'"  *Arctic Cat Inc. v.*

25   *Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017).  "For example,

26   allegations that a patent owner sent a letter merely notifying a third party of the existence of a

27   particular patent, without accusing that third party of infringement, is, by itself, insufficient."

28   *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103 WHA, 2021 WL 4685306, at *4 (citing

United States District Court
Northern District of California

1 | *Bayer Healthcare*, 989 F.3d at 987).

2 |        With respect to the '261 and '454 patents, Dali contends that Corning's pre-filing

3 | knowledge of the patents gives rise to a finding of willful infringement.  TAC ¶¶ 27, 29–30.  In

4 | particular, Dali alleges Corning had actual notice of the two patents on April 8 and 15, 2020.  This

5 | was days before the patents were first asserted in Dali's lawsuit in the First Amended Complaint

6 | on April 30, 2020.  TAC ¶¶ 29–30.  The short period of notice diminishes the likelihood of

7 | willfulness.  Moreover, Dali only alleges that Corning knew of the *patents*, not that Corning knew

8 | of *infringement* of the patents.  "Knowledge of infringement does not arise from knowledge of the

9 | asserted patent as a matter of course; it must be the subject of discrete, albeit related, allegations."

10 | *MasterObjects*, at *4 (N.D. Cal. Oct. 7, 2021).

11 |        With respect to the '358 patent, Dali argues that Corning had actual notice of the patent on

12 | August 8, 2016, well before the patent was asserted in the First Amended Complaint.  TAC ¶ 31.

13 | Dali alleges both knowledge of the *patent* and knowledge of *infringement*, but the amended

14 | complaint falls short.  Dali contends that Corning's counsel should have known that Corning's

15 | product was infringing because the "fractional frequency reuse" claimed in the '358 patent is

16 | "foundationally fundamental" to DAS systems.  TAC ¶¶ 207, 209, 215; MTD, at 9.  The Third

17 | Amended Complaint alleges that Mr. Montgomery was counsel of record on Corning's patents

18 | related to fractional frequency reuse, TAC ¶¶ 104, 168; that SpiderCloud and Corning advertised

19 | the accused products' fractional frequency reuse feature, TAC ¶¶ 108, 208, 292; and that

20 | SpiderCloud's patents describe a dynamic fractional frequency reuse technique, TAC ¶¶ 293, 297,

21 | 300.  Although this is persuasive evidence that Corning knew that its accused products practiced

22 | the fractional frequency reuse technique, Dali does not connect the dots.  Dali has not included

23 | plausible allegations that fractional frequency reuse is so foundational to DAS systems that Mr.

24 | Montgomery should have concluded that Corning's fractional frequency reuse products obviously

25 | infringed the DAS system.  There are thousands of patents directed towards fractional frequency

26 | reuse techniques.

27 |        Dali contends that, at the very least, Corning's post-filing knowledge of the patents give

28 | rise to a finding of willful infringement.  TAC ¶ 221.  Dali asserts that, once Corning received

United States District Court
Northern District of California

1    Dali's First Amended Complaint, Corning had knowledge of the patents and infringement and

2    should have ceased producing and selling its accused products.  TAC ¶ 222.  Some courts have

3    held that post-filing conduct may support a claim for willful infringement.  *See, e.g.*, *Merrill Mfg.*

4    *Co. v. Simmons Mfg. Co.*, 553 F. Supp. 3d 1297, 1306 (N.D. Ga. 2021); *Progme Corp. v. Comcast*

5    *Cable Commc'ns LLC*, No. CV 17-1488, 2017 WL 5070723, at *12 (E.D. Pa. Nov. 3, 2017).

6         However, the timeline here does not support actual knowledge of infringement.  While "a

7    well-pled, detailed complaint laying out a clear case of infringement could supply the knowledge

8    (post-complaint) required for willfulness once a defendant has had a reasonable period of time to

9    evaluate the complaint's contentions," *Sonos*, at *5, Dali's Third Amended Complaint, like the

10   prior complaint, is not so "well-pled" nor "detailed" and failed to "lay[] out a clear case of

11   infringement."  Docket No. 7, 109.  The SAC is not specific.  There is nothing akin, *e.g.*, to a

12   claim infringement chart.  Corning contends it would be unreasonable to require every defendant

13   "to cease sales at the time of the complaint (essentially taking a consent injunction) or face

14   willfulness allegations," absent specific and convincing infringement allegations.  MTD, at 14.

15        Dali's complaint does not set forth plausible allegations that Corning had specific

16   knowledge of the patents-at-suit nor knowledge of infringement of those patents.

17        2.    Egregiousness

18        In addition, to establish willfulness, the patent holder must establish egregious conduct.

19   Egregious conduct "is generally measured against the knowledge of the actor at the time of the

20   challenged conduct."  *Halo*, 579 U.S. at 105 (emphasis added).  In other words, a defendant acts

21   egregiously when he acts despite a "risk of infringement that was 'either known or so obvious

22   that it should have been known to the accused infringer.'"  *Arctic Cat*, 876 F.3d at 1371.  "The

23   subjective willfulness of a patent infringer may warrant enhanced damages, without regard to

24   whether his infringement was objectively reckless."  *Halo*, 579 U.S. at 105.  Dali argues that

25   Corning acted egregiously because it was "willfully blind as to whether it infringed the patents-in-

26   suit" and "deliberate[ly] . . . harmed the market for Dali's products and Dali's reputation as a

27   technology leader in the industry."  TAC ¶¶ 77–78.  This Court finds the allegations insufficient.

28        Dali's Third Amended Complaint fails to plausibly allege egregiousness for the same

reasons its Second Amended Complaint failed.  In its prior order, the Court first rejected Dali's

"affirmative duty" theory that Corning failed to proactively ensure that its products did not

infringe Dali's patents:

> Dali's first theory fails as it imposes an affirmative duty on Corning
> to ensure that its products did not infringe [Dali's patents], a
> standard that was expressly overruled by the Federal Circuit.  *In re
> Seagate Tech., LLC*, 497 F.3d 1360, 1368, 1371 (Fed. Cir. 2007),
> *abrogated on other grounds by Halo Elecs.*, 579 U.S. 93 (2016)
> ("[W]e abandon the affirmative duty of due care [to determine
> whether or not he is infringing], [and therefore] we also reemphasize
> that there is no affirmative obligation to obtain opinion of
> counsel."); 35 U.S.C. § 298 ("[F]ailure to obtain advice of counsel
> or getting it but not offering it in evidence, before embarking on
> infringing activity do not constitute evidence of willfulness of the
> infringement (direct or contributory or of inducement to infringe).").

Docket No. 148, at 6–7.  This Court also rejected Dali's "willful blindness" theory:

> According to the Supreme Court, "a willfully blind defendant is one
> who takes deliberate actions to avoid confirming a high probability
> of wrongdoing and who can almost be said to have actually known
> the critical facts."  *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563
> U.S. 754, 769 (2011).  Since *Glob.-Tech* and *Halo*, "courts have
> recognized that allegations of willful blindness can satisfy th[is]
> knowledge requirement for willful infringement."  Corephotonics,
> 2018 WL 4772340, at *9.  An inference of "willful[] blind[ness] to a
> high risk" of infringement is sufficient to satisfy this requirement.
> No such obvious risk has been alleged here.

Docket No. 148, at 7.  Dali's Third Amended Complaint merely reiterates these same theories

without providing additional facts.  This Court rejected these arguments then and it again rejects

them now.

Dali's Third Amended Complaint thus fails to plausibly plead willful infringement.  The

Court thus grants Corning's motion to dismiss.

B.    Motion to Strike

Corning also moves to strike.  Before responding to a pleading, a party may move to strike

any "redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. Proc. 12(f).  A matter

is "immaterial" if it "has no essential or important relationship to the claim for relief or the

defenses being pleaded."  *Fantasy*, 984 F.2d at 1527 (citing 5 Charles A. Wright & Arthur R.

Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)).  A matter is "impertinent" if it

United States District Court
Northern District of California

1   "do[es] not pertain and [is] not necessary, to the issues in question." *Id.* (citing 5 Charles A.

2   Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 711 (1990)).  Corning

3   moves to strike paragraphs 117–98 of the amended complaint, which allege that Mr. Montgomery

4   oversees Corning's patents and frequently cites Dali's patents in Corning's patents.  MTD, at 6.

5   Corning also moves to strike paragraphs 32–49, 52–70, and 109–16, which describe Dali and

6   Corning's pre-suit interactions.  MTD, at 6–7.  Corning lastly moves to strike paragraph 269,

7   which alleges that Corning's unrelated ONE system also infringed Dali's patents and cites to a

8   separate Texas district court case.  MTD, at 7 (citing *Dali Wireless, Inc. v. Corning Inc., et al.*, No.

9   6:20-cv-01108 (W.D. Tex. 2020)).

10       This Court denies Corning's motion to strike as to paragraphs 32–49, 52–70, 109–16, and

11   117–98.  "A motion to strike should not be granted unless the matter to be stricken clearly could

12   have no possible bearing on the subject of the litigation."  *Lilley v. Charren*, 936 F. Supp. 708, 713

13   (N.D. Cal. 1996).  "If there is any doubt whether the portion to be stricken might bear on an issue

14   in the litigation, the court should deny the motion."  *Platte*, 352 F. Supp. 2d at 1057; *see also*

15   *Lilley*, 936 F.Supp. at 713 ("Courts often regard motions to strike with disfavor, since such

16   motions are frequently used as stalling tactics and since pleadings are of limited importance in

17   federal practice.").  While the complaint fails to establish willful infringement, it does not

18   necessarily follow that the allegations in paragraphs 32–49, 52–70, 109–16, and 117–98 have "no

19   essential or important relationship" to the infringement claims.  Simply because they are

20   insufficient does not mean they are unnecessary or impertinent.  The parties' communications and

21   the cross-citations between Dali's and Corning's patents provide context for the substantive

22   infringement claims that are still at issue.  Moreover, Corning is free to deny any of Dali's

23   allegations in its answer to the complaint.

24       This Court grants Corning's motion to strike as to paragraph 269.  Paragraph 269 reads:

25   "Corning's ONE system also infringed Dali's patents, as demonstrated by *Dali Wireless, Inc. v.*

26   *Corning Inc. et al.* Case No. 6:20-cv-01108 (W.D. Tex. 2020)."  TAC ¶ 269.  But the Texas case

27   asserted an entirely different patent of Dali, accused a different category of Corning's products,

28   and reached no adjudication of infringement prior to being stayed.  This allegation is thus

immaterial, impertinent, and has no possible bearing on the current litigation, so the Court grants Corning's motion to strike paragraph 269 from the complaint.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Corning's Motion to Dismiss the allegations of willful infringement.  The Court **GRANTS IN PART** Corning's Motion to Strike as to paragraph 269 of the TAC but **DENIES IN PART** the remainder of the motion.

This order disposes of Docket No. 157.


**IT IS SO ORDERED**.


Dated: November 3, 2022

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California